FILED

2017 Mar-15  AM 11:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| **DANNY RAY DAVIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **1:16-cv-00721-AKK** |
| **CAROLYN W. COLVIN, ACTING** | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Danny Ray Davis brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge ("ALJ") applied the correct legal standards and that her decision — which has become the decision of the Commissioner — is supported by substantial evidence. Therefore, the court **AFFIRMS** the decision denying benefits.

## I.       PROCEDURAL HISTORY

Davis filed his application for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income on December 13, 2012, alleging a disability onset date of January 23, 2012 due to a back injury he sustained during a motor vehicle accident. (R. 72–73, 106, 110, 466–70). After the SSA denied his

application, Davis requested a hearing before an ALJ.   (R. 58).   The ALJ subsequently denied Davis's claim.   (R. 11).   The Appeals Council denied review (R. 7–9), rendering the ALJ's opinion the final decision of the Commissioner. Davis then filed this action pursuant to § 405(g).   (Doc. 1.).

## II.   STANDARD OF REVIEW

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 791 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).   42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'"   *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence."   *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."   *Martin*, 894 F.2d at 1529

(quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance."  *Lamb*, 847 F.2d at 701.

## III.   STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."   42 U.S.C. §§ 423(d)(1)(A), 416(i)(1)(A).   A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five-step analysis.  20 C.F.R. §§ 404.1520(a)–(f).  Specifically, the Commissioner must determine, in sequence:

(1) whether the claimant is currently unemployed;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals one listed by the Secretary;

(4) whether the claimant is unable to perform his or her past work; and

(5) whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id.* at 1030 (citing 20 C.F.R. §§ 416.920(a)–(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

## IV.   The ALJ's Decision

In performing the five-step analysis, the ALJ determined that Davis met the criteria for Step One, because he had not engaged in any substantial gainful activity since his alleged onset date in January 2012. (R. 16). Next, the ALJ acknowledged that Davis's impairments of cervical degenerative disc disease, degenerative joint disease, and obesity met the requirements of Step Two. (*Id.*). The ALJ then proceeded to the next step and found that Davis did not satisfy Step Three, because he did "not have an impairment or combination of impairments that

4

meets or medically equals the severity of one of the impairments included in 20 C.F.R. Part 404, Subpart P, Appendix 1." (R. 16–17) (internal citations omitted). In this step, the ALJ noted that an MRI of Davis's cervical, lumbar, and thoracic spine showed "mild to moderate deficits" and that Davis had "mild scoliosis with mild to moderate degenerative disc disease at the lumbar and cervical spine" and "mild degenerative joint disease at the shoulders." (*Id.* at 17). However, the ALJ found "no evidence of inability to ambulate effectively" and "no evidence to support disorganization of motor function in two extremities, or disturbance of gross and dexterous movements as well as no evidence of loss of function or impairment that interferes very seriously with [Davis's] ability to independently initiate, sustain, or complete activities." (*Id.*). Finally, the ALJ noted that Davis "is independent of personal care and activities of daily living without significant limitations." (*Id.*).

Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, she proceeded to Step Four, where she determined that, at his date last insured, Davis had the residual functional capacity ("RFC") to "perform less than a full range [of] light work as defined in 20 CFR 404.1567(b) and 416.967(b)," and could "lift/carry 20 pounds occasionally and 10 pounds frequently," "sit six hours in an eight hour workday," and "stand and/or walk six hours out of an entire 8-hour day." (R. 17). The ALJ articulated further

restrictions, specifically, that Davis "should never climb ladders, ropes or scaffolds, but he can occasionally climb ramps and stairs, balance, stoop, crouch, kneel, and crawl," and that he can "maintain concentration and attention for 2-hour periods at a time." (*Id.*).  In light of Davis's RFC and the testimony of a vocational expert, the ALJ determined that Davis was unable to perform any of his past relevant work.  (R. 22).  Lastly, in Step Five, after considering Davis's age, education, work experience, and RFC, the ALJ determined that "there are jobs that exist in significant numbers in the national economy that [Davis] can perform." (*Id.*).  Therefore, the ALJ found that Davis "has not been under a disability, as defined in the Social Security Act, from January 23, 2012."  (R. 23).

## V.    ANALYSIS

Because Davis, who is proceeding *pro se*, did not submit a brief in support of disability, the court will generally analyze whether substantial evidence supports the Commissioner's decision.

### A. Step One

Because, at Step One, the ALJ concluded that Davis had not "engaged in substantial gainful activity since January 23, 2012, the alleged onset date," (R. 16), the court will not review this step for error.

**B. Step Two**

At Step Two, the ALJ found that Davis suffered from three severe impairments.  Accordingly, any error at that step is not reversible.  *See Hearn v. Comm'r, SSA*, 619 F. App'x 892, 895 (11th Cir. 2015) ("Any error at step two was harmless because the ALJ found in [the claimant's] favor as to impairment, and the ALJ properly noted that he considered [the claimant's] impairments in the later steps.") (citations omitted).

**C. Step Three**

The ALJ stated at Step Three that Davis "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1." (R. 17).  The Eleventh Circuit has held that inclusion of this language sufficiently demonstrates that an ALJ considered a claimant's impairments in combination.  *See Wilson v. Barnhart*, 284 F.3d 1219, 1224–25 (11th Cir. 2002) (citing *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991)).  Still, for the sake of thoroughness, the court reviews the ALJ's consideration of Davis's impairments in her RFC assessment below.

1. <u>Davis's back and neck problems</u>

The ALJ acknowledged Davis's complaints of back and neck pain from an "on-the-job injury on January 23, 2012," (R. 19), but concluded that "the objective

evidence fails to support [Davis's] testimony," (R. 18).  For example, Davis's orthopedic treatment notes indicate only mild to moderate pain (*see, e.g.*, R. 352 (Davis reported a pain scale of "5 out of 10")).  Moreover, Dr. J. Stanford Faulkner, who evaluated Davis in 2012 after his accident, found that Davis was not a candidate for surgery and released Davis to return to full duty as a truck driver without restrictions.  (R. 20 (citing R. 243, 245–46).  The ALJ also acknowledged Davis's complaints of numbness and falling (R. 18), but, several times throughout his medical records, Davis denied experiencing numbness or muscle weakness, (*see, e.g.*, R. 411, 421, 446, 449, 452, 461).  Dr. Faulkner's September 2012 records indicated that there was "nothing to explain" Davis's alleged symptoms of "fall[ing] and [losing] control of his legs."  (R. 245).  The ALJ also considered the absence of any treatment records indicating falls or frequent accidents and that, "throughout the vast treatment notes, [Davis's] gait remained within normal range."  (R. 18; *see also* R. 322, 353, 421 (reporting normal gait); 270–71 (only mild degenerative disc disease)).

Finally, the record evidences a steady activity level.  For example, records from Dr. John Fischer, Davis's treating physician, indicate that while Davis experiences some intermittent pain, he remains independent of activities of daily living.  (R. 21 (citing R. 451)).  Davis also testified during his administrative hearing that he performs chores, uses a riding lawn mower to cut the grass

(although he sometimes requires his wife's assistance to finish that chore), and helps with cooking.  (R. 21, 496).[1]

In light of the foregoing evidence, the ALJ clearly articulated her reasons for discrediting Davis's subjective complaints of back and neck pain, numbness, and muscle weakness as a basis for his purported inability to work.  *See Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995) ("A clearly articulated credibility finding [as to a claimant's testimony regarding his pain] with substantial supporting evidence in the record will not be disturbed by a reviewing court.").

### 2.  Davis's heart attack

The ALJ also discussed Davis's allegation that he suffered a "light heart attack" on January 25, 2013 (R. 140, 146).   Other than Davis's subjective statements, however, the ALJ found no evidence that Davis was hospitalized or received any other treatment for a heart attack.[2]  (R. 18).  Specifically, as the ALJ noted, "there is not one ER record noting chest pain," and, when Davis complained of chest pain to Dr. Fischer on November 4, 2014 (*see* R. 451–52), "in-office

---

[1]  Additionally, in July 2012, an investigator surveilled Davis for a day to assess  his activity level.  (*See* R. 345–46).  The surveillance report indicates that Davis "drove to a Walmart store, exited the vehicle, entered the store, returned, and unloaded items from a cart, including two large bags of dog food he lifted over the tailgate into the bed." (R. 346).  The report further states that Davis was videotaped "walking in a strong, steady gait, all motions fluid; operating a motor vehicle; walking up and down steps; entering and exiting from the vehicle in one fluid motion; carrying and lifting large bags of dog food; pumping gas; and using both arms with equal dexterity with no hesitation."  (*Id.*).

[2]  During the administrative hearing, the ALJ asked Davis and/or his attorney to provide hospital records evidencing the heart attack, but they were not able to do so.  (R. 493).

testing was negative," (R. 18, 459).  Accordingly, substantial evidence supports the ALJ's conclusion that Davis's alleged heart attack was not a severe impairment that limited his ability to work.

### 3. Davis's obesity

The ALJ found Davis's obesity to be a severe impairment.  (R. 16).  Thus, consistent with SSR 02-1p, the ALJ considered in her RFC assessment whether Davis had any functional limitations resulting from his obesity.  The ALJ noted that "no treating physician has given any restrictions or limitations due to [Davis's] obesity" and that Davis's "physical examinations have show[n] a normal gait."  (R. 19; *see also* R. 322, 353, 421).  The ALJ therefore concluded that Davis's "obesity does not significantly interfere with [his] ability to perform physical activities or routine movement consistent with the exertional requirements of the residual functional capacity stated in [the ALJ's] opinion."  (R. 19).  Regardless, Davis did not claim — in either his application for disability benefits or at his administrative hearing before the ALJ — that his obesity limits his ability to work.  (*See* R. 110, 488–503).  For all of these reasons, the ALJ did not err in concluding that Davis's severe impairment of obesity does not limit his ability to work.

### D. Step Four

At Step Four, the ALJ determined that Davis was unable to perform his past relevant work as a construction laborer or truck driver.  (R. 22).  Accordingly, the court will not review this step for error.

### E. Step Five

At Step Five, the ALJ determined that, despite Davis's severe impairments, he still is able to perform jobs that exist in significant numbers in the national economy.  (R. 22).  In reaching this determination, the ALJ relied on the testimony of a vocational expert ("VE") who testified that an individual of Davis's age, education, and work history, who could "occasionally lift and/or carry 20 pounds" and "frequently lift ten [pounds]," "sit six of eight hours," "[s]tand and/or walk six of eight [hours]," "[n]ever climb ladders, ropes or scaffolds," "occasionally climb ramps, stairs, balance, stoop, crouch, kneel [and] crawl," and "[f]requently reach, push and/or pull, finger and handle," could perform "work at the light level," such as bakery worker, assembler, and inspector.  (R. 499–500).  Based on the court's independent review of the medical record, the ALJ's hypothetical question to the VE accounted for all of Davis's impairments.  Therefore, the VE's testimony constituted substantial evidence upon which the ALJ properly relied in determining that Davis was not disabled.  *See Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999).

## VI.    CONCLUSION

Based on the foregoing, the court concludes that the ALJ's determination that Davis is not disabled and has the RFC to perform reduced light work is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination.   Therefore, the Commissioner's final decision is **AFFIRMED**.   The court will enter a separate order in accordance with this Memorandum Opinion.

**DONE** the 15th day of March, 2017.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE

12